Case number 20-1533, Southern Iowa, United States v. Shaun Short. Mr. Parrish, good morning. Good morning, Your Honors, and may it please the Court and Council, Happy New Year to everyone. I'm representing Shaun Short, a young man who entered his plea, as the record shows, to a marijuana charge. I know that I listed the first argument as to the suppression of the automobile. I'd like to turn to the Frank's argument, because I think that is the more important argument. And from time to time, I may refer back to the automobile search to see whether or But we believe that the evidence was so scant that it did not create probable cause. We also think that the evidence was bolstered by a Frank's violation. Now, I'm not new to this idea, and I know that Frank's hearings are incredibly hard to get. However, in this case, I urge the Court to look at this case in this manner. The district court judge at the hearing on the suppression of the automobile conceded that she had not looked at the video, but would do it before she made a hearing. What I ask you to do is take a look at this case as if it's an NFL or NCAA replay. And what you're going to have the opportunity of is looking at the affidavit that was obtained by Becker. And as you look at that affidavit, follow the actual body cam video, because what you will see in this fact intensive argument is that the body cam is inconsistent with the the Becker affidavit was submitted about four o'clock in the afternoon, two to three hours after this occurred. And we're not saying that the officers were not in an unusual situation when a shooting occurs. It is, and we grant that. However, counsel, I haven't I haven't done studying as we properly are just to do. But what struck something struck me was in this arc in the in the argument in your brief, it's asserted that no witness put a gun in defendant's hand, except how do you pronounce it? Toby. That's correct. Toby. And that's directly contrary to a district court finding on page a 219 11 caller reported observing someone running from the apartment complex and firing a gun. The caller described this individual as and then consistent with your description of your client. So that seems to me to be pretty important to this issue. Well, let's see, Your Honor, I'm not sure it's important to the determination of that factor, because if you look at the search warrant that was issued, it wasn't considered a significant factor. So I don't think the court should look at that as a significant factor in determining whether or not you you had a Frank's a violation number one and number two is that Warren didn't get into the war to be the at the affidavit. I didn't follow what the Warren didn't consider it important. I didn't follow that. Yes, it didn't consider it was important that he had a weapon in his hand running around the apartment. Remember, it started with two automobiles and the short when he was standing by the challenger. So the idea that he may have had a gun at some point in the parking lot of the apartment does not change the thrust of the argument related to Frank's and whether or not the affidavit that was prepared by Officer Becker was consistent. And the reason is that they represented that Mr Toy Bay was credible. We know if you look at the affidavit compared to the body cam of Vance or the other officer Dawson, you will see that a toy be lied several times about who he was, where he was going, who he was with and other factors that were important. You will also see that toe also was not truthful. But yet in the representation to the neutral finder of factors, whether or not this warrant ought to be toward me was credible. But we know now at the Oh, I'm sorry. This is Judge Grimes. I have a question regarding the Frank's analysis. And I think in part, at least it comes down to whether or not this is whether you're alleging that there is an omission of critical information or whether it is a case of a false statement case. And the reason I asked that is that abuse of discretion is a very high standard, but it can be shown if there's an error of and I'd like Mr Ashley to address this as well when it gets his time. But it appears to me that the district court may have analyzed this as a false statement case rather than an omission case. Um, in which case that could be an error of law. I think you're correct. Uh, Judge Graf, there wasn't, uh, an analysis that was not proper in this case. Um, it was not simply a false statement where she jumps over and we are going to brief. She did kind of a but I think when I said at first that she had not looked at the video first, she probably just looked at the motion that was filed and tried to deal with it that way. But if you follow up with it and look at the omission off all of this information that had taken place initially, such as the shooting, who was chasing whom? What are the other factors? I think it ought to be analyzed as an error of law. And I think that's where the judge maybe got a track in a case like this pretty easily. If you don't have the video at the same time, you're listening to the evidence. What else is council? Would you clarify for me? I'm sorry. Would you clarify for me what specifically the error of law was here? Well, not the omission. Uh, and what was admitted from the record? Judge Kobe would be this. It would be the fact that, uh, a toy beat was not truthful, that he'd lied about who he was, how he got over there, whether or not he was a shooter, whether or not he was being, uh, chased or not. But we know, and I think all the parties would agree that short was the victim here. The young man who played guilty and all he's saying he was denied a Frank's hearing to be able to establish this to the court and then make his preponderance argument. So that was an admission standard judge. And I think that's what we're saying in this case. And it was not simply a false statement. I think you could almost make the argument that it was both that the officer Becker, when he submitted his affidavit, had access to this other information. And we're saying it's a little bit beyond negligence. Now, when he made these statements to the, uh, judge later on that afternoon, about four o'clock, as you know, the, uh, search warrant didn't get filed until the next day. So we know it's late in the afternoon after all of this had occurred that he did. So you have to look at both of those, the admission and you have to look at the fact that he said a toy B statement was corroborated. And he said that he was reliable. There is no way looking at the body cam that you can say that a toy B was reliable. But ultimately, Judge Kobe, how do you get into his apartment with that information? The judge does an excisement argument, and she does a decent job of that. However, this is the problem. If you pare down what was taken out, how do you get into apartment number 70? These young men, if you consider them reliable, didn't even say that they actually bought drugs from inside the And remember, they've already given several contradictory statements about whether or not they said they were going there or not. And finally, a toy B says, Well, really, toe was going there and not him. And he was dropping him off to pick this up. But if you look at the videos in real time, you'll have a good vision of where the discrepancies are occurring. The big question is, what did Becker know when he made this affidavit and had the assistant Polk County attorney, Mr Vote, go into a neutral finder and say, This is what exists here. Well, you could say it's negligence, or you could say he deliberately misled the judge. How can you get there? Well, you can take a look at how he wrote the affidavit and see which category he put a toy B in and see whether or not he said a toy B was reliable. And if you exercise all of that, you've consistently said that, Hey, look, just because someone had less than two grams of marijuana in an automobile, how do you get into their home? If you said he had an I d card identifying him as living at that address, how do you get into his home? So that's the problem that you have to grapple with when you make this decision. We believe that the evidence clearly establishes that. And I know because I've been turned down enough for Frank's hearing, but this is a classic case where you get the opportunity to look at in real time what was happening. You get a chance to look at the affidavit. You get a chance to compare and you go back to what Judge Grass said. If you take a look at those factors, you will see this was not only false statement where was the end of her analysis, but also an admission analysis, which we believe you have to look at. So for those factors, we believe this case ought to be sent back. And I know it's a rare occurrence for any court. The big the big joke is that, um, the the main case here, Frank's his case was sent back down by the Supreme Court and he was denied a Frank's hearing. I get that. But in this case, the Frank's hearing should have been allowed. Thank you so much. And I'll save my time for rebuttal. Let's hear some questions by this court. Very good. Thank you. Ms. Easley for the government? Or Mr. Easley? Go ahead. I'll try to stand in, Your Honor, and it's pronounced Esley. Um, may it please the court. Uh, this court should affirm the district court's press. It should likewise affirm the district court's refusal to grant a Frank's hearing in this case. And finally, it should affirm the district court's imposition of a 72 month sentence. Aziz, my opposing counsel that I'm also going to focus on the Frank's hearing issue. Aziz said a moment ago, this court should affirm the district court's denial of a Frank's hearing. There was no abuse of discretion here on the part of the district court. There is, of course, a presumption of validity in favor of the affidavit completed by Detective Becker in this case. And to overcome that presumption, Mr Short must make a substantial preliminary showing a showing which includes two prongs, neither of which Mr Short has been able to overcome in this instance. I'll start just briefly addressing the question. Judge Grass Gross asked opposing counsel about a potential error of law at docket number 36-1. That is the as Mr. Short's motion to suppress. In that motion, it repeatedly makes statements about omissions, saying the affidavit fails to mention. This is primarily at pages 15 through 16, saying that the affidavit omits the reference numerous phrases to that effect. And when you read the district court's order, which is docket number 55, it mirrors that, and it's unsurprising. It does. Counsel, let me ask you about that. If this is an omission case, it does seem that the district court set forth the wrong test at page six. Dock 55 at page six. The court sets forth the test for a false statement analysis rather than an omission analysis. Well, Your Honor, I'm not sure exactly what the district court said on page six of her order. The court said the affidavit must have entertained serious doubts as to the truth of the statements, or had obvious reasons to doubt the accuracy of the information reported. That's the false statement analysis. That is the reckless disregard standard. However, in general, the same analysis, the first prong is the same, regardless of whether it's omission or whether it's misrepresentation. The question is whether the misrepresentation or the omission was deliberately omitted or recklessly omitted in such a way. Right, but the point, counsel, is that there's a difference in our case law if there's an omission because there can be an inference of recklessness due to an omission. There's a whole line of cases on it. Of course, Your Honor, I think the ultimate answer would be, in this case, the district court got it right anyways. There is no inference you could reach here. The only omissions that Mr. Short points to are minor discrepancies that do not satisfy that first prong, regardless of whether it's a misrepresentation or an omission. All we have here is his conclusory assertions, which, as the Supreme Court said in Frankston, as this court has echoed repeatedly. Counsel, I don't know that. I'm not sure it's correct to say that there are minor points. This court has said that the source of information is clearly critical to the finding of probable cause, and so the reliability of that information is, if it's omitted, that can certainly be a clearly critical omission. It certainly can be, Your Honor, and I do not mean to suggest that I disagree with you on that point. I do agree with you. However, the mere fact that there is an omission, the defendant was deliberately or recklessly misleading the court, and here we simply do not have that. I'll focus on what are Mr. Short's complaints about the affidavit statements about Mr. Atiebi. For example, he says several places in his brief that the affidavit incorrectly claimed that Mr. or did not notify the court that Mr. Atiebi initially told officers he and Mr. Toe were there to purchase weed from, quote, somebody. That's correct. The affidavit did not include that fact. It instead stated that Mr. Atiebi had told Detective Dawson specifically that he and Mr. Toe were there to purchase weed from Short. Now, Mr. Short claims that this court should ignore the statement in the affidavit, and I quote, he says, this court should not rely on statements in the affidavit to In his reply brief, he's essentially arguing that if it wasn't captured on camera, then this court should not consider it. There's no case support, however, for that proposition. Neither Mr. Short nor the government has found any. The closest cases on this point are the Cattoria and Rodriguez cases cited in the government's brief. In Cattoria, this court said that the district court should focus and should credit, should focus on and credit the sworn affidavit rather than an informal memorandum that was also written by the affiant. The same general idea is present here that the sworn affidavit is entitled to wait regardless if there is other proof verifying the statements in the affidavit. Obviously, some other evidence establishing the facts in the affidavit is helpful, but when an officer swears to it, the whole purpose of Frank's is that the defendant has to come forward with statements and he, Mr. Short, has not done so here in regard to that statement. Now, Mr. Short also complains that the affidavit incorrectly stated that Mr. Atiyebi was credible. Uh, however, the statements and the rationale the affidavit used to support that conclusion are true statements and thus could be in the affidavit without necessitating a Frank's hearing. First of all, the affidavit said Mr. Atiyebi was credible because he was named in the affidavit. There's no dispute Mr. Atiyebi was named specifically in the affidavit. Secondly, the affidavit claimed that Mr. Atiyebi was credible because his statements were made to law enforcement were contrary to his penal interest. That's also true. He told officers that he and Mr. Toe were at the apartment complex to purchase marijuana, and he also testified that his passenger, Mr. Toe, exchanged fire with another individual. Finally, the Mr. Atiyebi was credible because his statements have been corroborated by law enforcement. That also was true. Mr. Toe likewise told law enforcement officers that he had been shot at by another individual, that it was about a dispute over marijuana. Other 9-1-1 calls, excuse me, also corroborated the statement that two individuals were involved in a shooting in two cars, and moreover, Mr. Atiyebi's car had visible damage from the shooting. Its window was shattered out, and its front driver's side mirror was also broken. So all of that supports the affidavit's assertion that Mr. Atiyebi was credible. Now the last point that Mr. Short makes about Mr. Atiyebi is that it omitted the fact that Mr. Atiyebi had initially given officers a false identity, and that he did not initially state that he had brought Mr. Toe to the crime scene. Again, in the grand scheme of things here, there's nothing to suggest that the affiant Detective Becker knew that those statements were ever made to police officers. And like opposing counsel, I direct you to watch to the videos in this case. You will often notice that when one of the suspects give a statement to police officers, they continue asking questions, they continue probing, trying to make sure that the statement is true. If it isn't true, or if they're not happy with the answer, the officers do not then continue to disclose the information they do not believe to other law enforcement officers. The officers summarize what they're hearing from those suspects to try to figure out as a group what is going on here. It was an extremely chaotic scene, and you can tell from the officers' demeanor and their actions that they're doing their best to try to understand what happened here. And all of the information disclosed to them is not being passed on. And there's simply no reason here to suggest that Detective Becker knew that any of these individuals had misled police officers initially, or had at one point given one story that became another. And without proof of that, the videos standing alone simply don't do the trick. You need some additional evidence to show that Detective Becker either was recklessly disregarding that information or that he was trying to get information from his affidavit. Counsel, I'd like to briefly, if I could, turn to the issue of the sufficiency of the affidavit. And suppose for a moment that the affidavit was supplemented with the information that Mr. Parrish says was omitted. Do you have any Eight Circuit precedent that you can point to that the possession of a user quantity of marijuana by a person creates probable cause to search their house? Your Honor, I'm unaware of any case where the user quantity of marijuana standing alone is sufficient to justify a search of a residence. However, that is How about the possession of $300 of cash? Any precedent for that? Again, Your Honor, I'm not aware of any cases standing for the proposition that a large amount of money standing alone is grounds for a search warrant. However, here is $300 even considered a large amount of money in this circuit. It is, Your Honor, and the officers assuredly thought it was. Officer Miller repeatedly said that that Mr. Short had a pocket full of cash. I would point this court to the court statement in technical ordinance, which is cited in our brief, in the government's brief. In that court or in that opinion, this court reminded district courts and attorneys to view warrants in totality and not viewing each piece in isolation. And doing that here, it's clear that Mr. Short has not satisfied the second prong of the substantial preliminary showing that requires a Frank's hearing. Looking at the evidence here, even as modify or modifying the warrant as Mr. Parrish suggests, we would have, first of all, a 911 caller describing a person matching Mr. Short in appearance as being involved in the gunfight and being one of the shooters. The district court, as Judge Loken said, made that finding explicitly. Contrary to opposing counsel's suggestion that that statement was not important, that is a key statement in this case that Mr. Short was involved in a shooting. It wasn't, though, that he was just evidence suggesting that drugs were involved. And so, well, before I go there, there was also 911 callers saying that Mr. Short's vehicle had been involved in the shooting a black Dodge Charger. But moving to the drug related evidence, we have an officer who smelled a car that he said, quote, reeked of dope. Uh, and another officer confirmed that. Let me just pause counsel. I thought it was important that it was not only running shooting, but he was running from the apartment complex. That's correct. Where I told me and toe said they were going to do a deal. That's correct. So he was defending or whatever it is. He was defending the resident, the place where the warrant search would be conducted. That's correct. And and so using the smell of marijuana and other evidence, officers searched the car, found marijuana. Aziz, Judge Gross Gross pointed out that is a personal use amount. However, in this case, the pungency of the odor officers, as I said, said it reeked of dope, uh, suggests that there may have been more marijuana present in the car at some point, which again suggests that it may have been in the apartment. As Detective Becker testified on page 39 of the suppression transcript, the smell of marijuana can linger, uh, suggesting that more may want marijuana may have been present in the car again. We have a large amount of cash. We have Mr Short's history of controlled substances as well as his mother's history of, I believe, one controlled substance violation. I see Mr Short and his mother's history of controlled substance violations. And then finally, we have the statements of Mr Toe and Mr Atiebi and the general, uh, view of their car that they came in, which, as I said, had a shattered window and its front mirror broken off. Obviously, Mr Toe would not have shot his own car, and Mr Atiebi said he was nearly struck by a bullet himself. But on top of that, we have evidence to suggest that Mr Toe and Mr Atiebi, even modifying the warrant affidavit, as Mr Parrish suggests, were there to purchase weed from someone. And regardless of whether Mr Short or Mr Atiebi ever named Mr Short specifically as that someone, it is clear that Mr Short was there in a gunfight with them when they were there to purchase marijuana. All of that suggests in totality that probable cause would exist regardless of whether this this warrant affidavit is modified. And for all of those reasons, Mr Short has failed to show that the district court abuses discretion and failed to show the substantial preliminaries showing necessary to acquire a Frank's hearing. For many of the same reasons, his suppression motion was rightly denied. This court, of course, can affirm the denial of a suppression motion on any ground supported by the record as set forth in the government's brief. There are two alternative grounds this court could rely on to affirm the district court. First of all, automobile exception. And secondly, a valid search incident to arrest. I would just briefly state that Mr Short seems to concede that probable cause existed for purposes of the automobile exception. He instead argues that Mr Short's car was not mobile due to the flat tire it had suffered, the fact it was in a parking lot, and the fact that Mr Short had been secured. However, except within our brief, those factors are simply not enough to render the search on lawful. The automobile retained its inherent mobility, and another rationale for the exception is the pervasive regulation of automobiles. If there are no further questions, I will stop talking. Very good. Four minutes for a bottle that says Mr Parish. Thank you, Your Honors. I'd like to go back to the search warrant. I urge the court to go to the search warrant. I think the government made a decent argument about all the things that led up to the search warrant. But really, when you focus on the search warrant, you have to go back to what Judge Grass brought up, and that is, was it an omission? Yes. Everybody has to concede that. And the other thing, Judge Logan, I'm not sure there was substantial evidence saying that my client, Mr Short, was running away from the apartment. I think Mr Miller is the first one who shows up. He sees him standing by a Darbs challenger by his vehicle. Counsel, I was just going by the district court's finding. There was a 9-1-1 caller reported seeing that. Yes. Is that proof? Well, that's evidence. I don't think it gets you into apartment 70, and I think that's what we have to focus on. We have to focus on the argument here. Was this young man entitled to a Frank's hearing? He made every step necessary to get there. Look at the lies that are told you told that was not told to the neutral fact finder. Uh, when they said he was credible, that's what they told the neutral fact finder. He did not name short as the shooter. He provided a false name, did not use short as the person he was purchasing drugs from called him easy, and we know no names associated with easy. He minimized his involvement, did not say that short sold him any marijuana either before at any point in time, never said that any marijuana was in short's house. He did not knowing short. Matter of fact, he said toe was the one who wanted to purchase this marijuana. So those are the omissions. That's pretty substantial. When you're trying to get into someone's home, there's the $300 of Judge Grass wrote brought up. Is that enough? There is no case. We didn't find a case. The government didn't find a case to support that. There's a user amount of marijuana. Council. I thought I had council. I thought I had told Toby said somebody in his initial interview and then in a later interview said it was it was short, right? And with the until you get the happy answer, and then you get the happy answer and you put that into the warrant. Hey, that's not why we do it. That's not how we do it. What we do. We try to tell neutral fact finders the truth. That's what we want our officers to do. We don't want them making up stuff. We don't want them looking for happy answers are the ones that satisfy them. If they're gonna go with happy answers, they should then talk about the credibility issues and you should not represent to a neutral finder who's going to issue a warrant that this is the answer we wanted. That's why you have a unique opportunity in this case to review this in real time. As you see the affidavit when you do that, you will see that this young man is entitled to a frank hearing. And the analysis, I think it's pointed out by Judge Grass is right. She did an omission, but she did. But she did. She missed that. She did the false statements one, and that's a bit heavier burden for us to carry. But in this case, we believe that Becker knew on when he made that affidavit all of this contradictory information because if he was experienced as he said he was in his opening statement before the court, he is aware that folks like toe folks like a toy be don't tell the truth all the time without them telling the truth all the time. They need to let a neutral finder and we should. This young man should have had a hearing and all we're asking you reverse. Let us pursue this in a Frank's hearing and a different result could come about. Thank you so much. And it's always an honor to appear before this court. Thank you, Counsel. Very well. Are you, Mr Parish? It's always a pleasure. Have you argue because it's always always tests are our legal skills and intuitions case. The case is raises interesting issues, and we will take it under advisement.